# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| SECURE AXCESS, LLC | |
|     Plaintiff, | |
|     v. | CIVIL ACTION NO. 6:11-CV-338 |
| (1)    DELL INC.; | |
| (2)    AMERICAN BANK OF TEXAS; | **JURY TRIAL DEMANDED** |
| (3)    CITIGROUP INC.; | |
| (4)    CITIZENS STATE BANK; | |
| (5)    EVITE, LLC; | |
| (6)    FUNDSXPRESS FINANCIAL NETWORK, INC.; | |
| (7)    HOTELS.COM, L.P.; | |
| (8)    JPMORGAN CHASE & CO.; | |
| (9)    MATCH.COM, L.L.C.; | |
| (10)  SUNTRUST BANKS, INC.; and | |
| (11)  THE PEP BOYS – MANNY, MOE & JACK | |
|     Defendants. | |

## SUR-REPLY IN OPPOSITION TO DELL'S MOTION TO DISQUALIFY

I.      **DELL CANNOT EXPLAIN ITS FAILURE TO DISCLOSE THE TRUE FACTS**

In its opening brief, Dell argued as if the Weil firm had been engaged directly by Dell to defend it in *MicroUnity* and *Fenner*.  Dell attempted to create the impression that Mr. Antonelli and Mr. Harrington put in 2,500 hours working directly with Dell and Dell's in-house counsel on Dell-specific issues.  But Dell purposefully withheld material information about the true nature of the former *MicroUnity* and *Fenner* representations:  (1) Weil was really hired by Intel in *MicroUnity*, and another company in *Fenner*, who each were indemnifying Dell; (2) the former matters related to the technology of those other companies, not Dell's technology; (3) Weil's representation of Dell was limited in scope to issues that Dell had in common with the other companies; and (4) Dell had separate counsel for any issues unique to it.

In its reply brief, Dell does not even attempt to explain its failure to disclose the true nature of the former matters.  Instead, Dell argues that none of these facts matter because Mr. Antonelli and Mr. Harrington were still Dell's lawyers, even if other companies like Intel were paying the bills and calling the shots.  *See* Dell Reply at 1, 5.  Dell's reply misses the point.  No one is arguing that Mr. Antonelli and Mr. Harrington were not Dell's attorneys in the former matters.  The point is that the true facts make clear that *MicroUnity* and *Fenner* did not involve Dell confidential information or any meaningful interaction with Dell or Dell's in-house counsel.  So Dell's original argument—that Mr. Antonelli and Mr. Harrington must be disqualified because they had access to Dell's patent litigation strategies—simply does not work.

II.     **DELL CANNOT POINT TO ANY CONFIDENTIAL INFORMATION THAT WOULD HARM IT IN THIS CASE**

Dell does not even attempt to maintain its prior argument that Mr. Antonelli and Mr. Harrington had access to Dell's patent litigation "playbook."  In view of the true nature of *MicroUnity* and *Fenner*, Dell knows that argument is simply untenable.

1

All Dell has is a single preliminary meeting that Mr. Antonelli attended in *Fenner*, on which he billed only 100 hours before being taken off the case.  That is the meeting which even Dell's own declarant admits was called early in the case "in preparation for discovery."  Newton Decl. ¶ 8.  And that was the meeting which no Dell declarant could actually say involved discussing Dell's litigation strategies.  Nothing was discussed at that meeting that would give Mr. Antonelli or his partners an advantage in this case.

Not able to identify any confidential information or explain how it could be supposedly used to Dell's disadvantage in this case, Dell instead relies on the fact that Mr. Antonelli and Mr. Harrington billed a total of 2,500 hours to the prior matters, and argues that since they spent so much time on the matter, they must have acquired some Dell confidential information.  Dell Reply at 5.  But it is only by ignoring the true nature of *MicroUnity* and *Fenner* that Dell can make this argument.  Both *MicroUnity* and *Fenner* really involved the products of other companies, and Dell did not really have a stake in them.  For that reason, Dell demanded indemnity and turned over the defense of the cases to the other companies.  In both cases, the Weil firm's representation of Dell was limited such that Weil was representing Dell only to the extent that its representation of other companies also worked to Dell's benefit.  Indeed, Dell had its own separate counsel for its own separate issues.  It is only by ignoring these facts, that Dell can claim that the 2,500 hours spent by Mr. Antonelli and Mr. Harrington on the former matters must have involved Dell's confidential information.  But the truth is that Mr. Antonelli and Mr. Harrington did not have access to Dell's confidential information, and did not have any meaningful interactions with Dell or Dell's in-house counsel, because the former matters were not really about Dell.

### III.    DELL'S ARGUMENT PROVES TOO MUCH

According to Dell, Mr. Antonelli and Mr. Harrington are barred from representing clients adverse to Dell *in any patent case* because they represented Dell in past patent cases when they were employed by the Weil firm.  Indeed, Dell has moved to disqualify AHT in five different patent cases, involving a wide range of different technologies.  If all of these cases are substantially related, then every patent case involving the same party is substantially related.

Dell tries to obscure this truth by arguing that Mr. Antonelli and Mr. Harrington were exposed to its legal strategies, but these general arguments can be made whenever former and current matters relate to the same type of legal problem.  Under the law of the Fifth Circuit, they do not establish a conflict of interest.  "In resolving conflict issues, the Fifth Circuit looks to the American Bar Association (ABA) Model Rules."  *Commonwealth Scientific & Indus. Research Org. v. Toshiba Am. Information Sys.*, 297 Fed. Appx. 970, 973-75 (Fed. Cir. 2008).  The ABA Model Rules expressly reject the argument that Dell is making here.  *See* ABA Model Rule 1.9, Comment [2] ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."); Comment [3] ("In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation.").

Dell continues to argue that all it has to show is "more than a superficial relationship" between the current and former matters.  Dell Reply at 1.  Dell bases this entirely on *In re Riles*, 2000 WL 1062086 (Fed. Cir. 2000).  But Dell continues to ignore key aspects of that case:

- *In re Riles* is unpublished and non-precedential.  It is not binding on this or any other court.  *See, e.g.,* Fed. Cir. R. 32.1(d).

3

- The *In re Riles* opinion noted that there was "more than a superficial relationship" only in distinguishing a prior case holding that "only a superficial relationship" was not enough for a conflict.  It did not change the substantial relationship test.

- *In re Riles* was a mandamus decision.  The Federal Circuit decided to leave undisturbed the district court's decision that there was a conflict in view of the strict standard of review on mandamus.  That standard does not apply here.

- *In re Riles* is over a decade old, yet not a single court has relied on it for the proposition that all a conflict requires is "more than a superficial relationship."

 Dell claims that AHT is "largely ignoring the controlling precedent in this Circuit" and that it instead "relies on *dicta* from inapposite cases."  Dell Reply at 3.  Not so.  AHT relies on *Biax Corp. v. Fujitsu Computer Sys.*, No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 35770 (E.D Tex. May 16, 2007) and *Power MOSFET Techs., L.L.C. v. Siemens AG*, No. 2:99-cv-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sept. 30, 2002).  These are the only cases from this district cited by either party that address whether a former representation presents a conflict.[1]  Both cases were decided after *In re Riles*.  And in both of these cases, the relationship between the former and current matters was much closer than it is here, but still was insufficient to raise a conflict.

It is Dell that is asking the Court to accept inapposite cases from outside of the Fifth Circuit.  Indeed, immediately after saying that AHT is "ignoring the controlling precedent in this Circuit," Dell asks the Court to rely on *Sunbeam Products* from the Eastern District of Virginia, which Dell characterizes as "rejecting cases like *Power Mosfet*."  Dell Reply at 3.  This Court should follow the *Biax* and *Power MOSFET* decisions from this district, not the decisions of districts outside the Fifth Circuit that have supposedly rejected them.

---

[1] Dell cites one case from this district in which a conflict was found.  *See* Dell Reply at 3 (citing *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-cv-463-CE (E.D. Tex. Jan. 6, 2009).  But Dell fails to acknowledge that *Honeywell* involved a conflict based on a concurrent representation, not a former representation, and so does not apply here.  *See* Exhibit 1 at 3.

## IV.    DELL CONTINUES TO HIDE THE TERMS OF THE PRIOR ENGAGEMENTS

Dell does not deny that in view of the limited nature of Weil's representation, Dell waived the conflicts that it is now arguing.  *See* Dell Reply at 5, n. 4.  Instead, Dell argues only that its waiver does not apply "to the Antonelli firm."  *See id.*  Despite making these arguments, Dell still has not produced the engagement letters.  Because Dell's allegations are based on Mr. Antonelli and Mr. Harrington's representation of Dell when they worked for Weil, the engagement terms between Weil and Dell govern their duties to Dell as a former client.    If the Court is unconvinced that no conflict exists based on the current record, it should order limited discovery so that Dell cannot continue to hide the key engagement and indemnity documents.

## V.    DELL'S REPLY BRIEF CONTAINS NEW FACTUAL INACCURACIES

Dell's reply brief adds several misstatements of fact:

- Dell argues that AHT used "knowledge of Dell" to "unfairly" take Mr. Peterman's deposition in an earlier case.  Dell Reply at 4, n.3.  But Dell chose to submit Mr. Peterman's declaration to support a motion to transfer, agreed to a 30(b)(6) deposition, and designated Mr. Peterman to be its 30(b)(6) witness. AHT did not use any "inside information" to depose him.  Dell does not have a shred of evidence to support this serious charge.

- Dell says that Mr. Antonelli and Mr. Harrington "engaged in substantive meetings with Dell."  Dell Reply at 1.  But Dell identifies only a single meeting, which its declarant admits was called early in the case "in preparation for discovery." Newton Decl. ¶ 8.  And no Dell declarant could actually say the meeting involved discussing Dell's litigation strategies. It did not.

- Dell also argues that Mr. Antonelli and Mr. Harrington were "entrusted by Dell with critical . . . decision making."  Dell Reply at 1.  But Dell has not shown any decision that Dell itself (as opposed to its indemnitors) entrusted Mr. Antonelli or Mr. Harrington to make.  That never happened.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Dell's motion for disqualification.

Dated: January 27, 2012


Respectfully submitted,


Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Antonelli, Harrington & Thompson LLP
4200 Montrose Blvd., Ste. 430
Houston, TX 77006
(713) 581-3000
(713) 581-3020 (fax)

Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Antonelli, Harrington & Thompson LLP
4200 Montrose Blvd., Ste. 430
Houston, TX 77006
(713) 581-3000
(713) 581-3020 (fax)


Attorneys for Plaintiff Secure Axcess, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of January 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  Matthew J. Antonelli
Matthew Antonelli