**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SECURE AXCESS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:11-CV-338** |
| | § | |
| **DELL INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Dell Inc.'s Motion to Disqualify Plaintiff's Counsel (Docket No. 136). For the reasons stated below, the Court **DENIES** Dell's motion.

**BACKGROUND**

Plaintiff, Secure Axcess ("Secure"), has hired Antonelli, Harrington & Thompson LLP ("AHT") as its counsel in this case. Three AHT attorneys—Matthew Antonelli, Zachariah Harrington, and Larry Thompson—previously worked at Weil, Gotshal & Manges LLP ("Weil") before forming AHT. Antonelli worked at Weil from 2000 to 2010, Harrington from 2004 to 2008, and Thompson from 2005 to 2010. While at Weil, Antonelli and Harrington both represented Dell in two patent infringement cases: *MicroUnity Systems Engineering, Inc. v. Dell, Inc.*, No. 2:04-cv-120 (E.D. Tex. dismissed Nov. 8, 2005) and *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273 (E.D. Tex. dismissed May 19, 2010).

**The *MicroUnity* Litigation**

*MicroUnity* involved allegations of infringement regarding eight different patents; seven of the patents involved media processors and the remaining patent involved a memory controller. MicroUnity accused Dell of infringing the patents by selling products that used allegedly

infringing Intel microprocessors. Pursuant to a prior agreement between Intel and Dell, Intel agreed to indemnify Dell with respect to MicroUnity's infringement claims against Dell. Accordingly, Intel's counsel, Weil, represented Dell on the issues subject to indemnification; however, Dell retained separate counsel, Jones Day, for issues unique to Dell.

Antonelli and Harrington both worked on *MicroUnity* while employed at Weil. Antonelli worked approximately 2,260 hours on the case from October 2004 to October 2005, and Harrington worked for approximately 290 hours during the same time period. Their work included reviewing documents, preparing invalidity charts, proposing claim constructions, preparing declarations, responding to interrogatories, and preparing presentations. Ultimately, the case settled and Intel obtained a license to MicroUnity's patents that covered the claims against Dell.

**The *Fenner* Litigation**

*Fenner* involved allegations of infringement regarding two patents related to network communications and filtering packets over a network. Dell's PowerConnect switches and PowerEdge blade servers were accused of infringing the patents-in-suit. Antonelli worked approximately 100 hours on the case from November 2008 to February 2009. His work largely involved reviewing the patents, reviewing infringement contentions, and developing non-infringement arguments. He also participated in a meeting at Round Rock, Texas with several employees of Dell, including Anthony Peterman, Chief Intellectual Property Counsel; Renee Meisel, Senior Counsel specializing in storage and production of documents; Darryl Hanson, Engineer; Luis Moreira, Senior Program Manager for Networking Protocols; and Joseph Ferrel. Finally, Antonelli was a member of a joint defense group email list. Antonelli last worked on the case on February 18, 2009, and the case settled on May 19, 2009.

**The Instant Litigation**

In this case, Secure accuses Dell of infringing U.S. Patent No. 6,601,169, which relates to key-based secure network user states, by using "a particular functionality for encrypting cookies on the Dell.com website." Docket No. 136, at 8. On November 22, 2011, Dell notified Antonelli that it objected to his representation of Secure in this matter based on his prior representation of Dell in *MicroUnity* and *Fenner*. After Antonelli responded that he did not believe his prior representations presented a conflict, Dell filed the underlying motion to disqualify counsel on December 28, 2011.

## APPLICABLE LAW

As disqualification is a procedural matter not unique to patent law, regional circuit law applies. *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578, 580–81 (Fed. Cir. 1989). The movant bears the burden of proving that disqualification is warranted. *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981). "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992). Federal courts are not bound by state ethical rules; they may also look to national norms, such as the ABA Model Rules. *In re Am. Airlines, Inc.*, 972 F.2d at 610. The attorney disqualification rules are not to be mechanically applied. *See Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir. 1989). "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).

For conflicts involving former representations, the movant must prove either that the present and former matters are substantially related or that the former attorney actually possesses

relevant confidential information. *In re Am. Airlines*, 972 F.2d at 615–16; *see also* ABA Model Rule 1.09; Tex. R. Disciplinary P. 1.09. Under the substantially related test, the movant must prove: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614. In determining if the present and former matters are substantially related, courts have identified three relevant factors: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal question posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Power Mosfet Techs, L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557, at *2, (E.D. Tex. 2002). If the movant establishes that the prior matter is substantially related to the present matter, an irrebuttable presumption arises that relevant confidential information was disclosed during the former representation. *In re Am. Airlines*, 972 F.2d at 614.

## ANALYSIS

Dell argues that AHT should be disqualified as Secure's counsel for three reasons. First, Dell contends that the *MicroUnity* and *Fenner* litigations are substantially related to the instant litigation. Second, Dell argues that there is a reasonable probability that AHT's access to confidential information will be used to Dell's disadvantage. Finally, Dell argues that AHT must be disqualified to ensure the loyalty of Dell's former counsel.

### Substantially Related

As an initial matter, the parties dispute the appropriate test for determining whether cases are substantially related. Dell proposes that two cases are substantially related when "the past representation bears 'more than a superficial relationship' to the present action." Docket No. 136, at 10 (quoting *In re Riles*, 2000 U.S. App. LEXIS 20186, at *9 (Fed. Cir. July 20, 2000)

(unpublished)). Secure responds that the Federal Circuit was not promulgating the test for a substantial relationship; rather, it was distinguishing *Duncan* where the Fifth Circuit found that a substantial relationship did not exist because the evidence merely indicated a superficial relationship. *See Duncan*, 646 F.2d at 1029 ("Merely pointing to a superficial resemblance between the present and prior representations will not substitute for the careful comparison demanded by our cases."). Secure is correct that merely showing more than a superficial relationship is not necessarily enough to cross the substantial relationship threshold. The test is whether the prior and current representations are substantially related. *In re Am. Airlines*, 972 F.2d at 616.

Dell argues that the instant case is substantially related to both *MicroUnity* and *Fenner* for three reasons. First, all three cases are patent infringement cases involving computer inventions. Dell further highlights the similarities between the technologies in the instant case and *Fenner*, noting that both involve computers communicating over a network. Second, Dell notes that *MicroUnity* and *Fenner* were before courts in this District. Finally, Dell argues that it has developed confidential strategies for defending patent infringement cases and that the use of these strategies in *MicroUnity*, *Fenner*, and the instant case warrants a finding that they are substantially related.[1]

Secure responds that the broad technological similarities among *MicroUnity*, *Fenner*, and the instant case are insufficient to establish a substantial relationship. Secure further indicates that the accused products in the cases are different: *MicroUnity* involved Intel microprocessors and chipsets; *Fenner* involved network switches and blade servers; and the instant case involves Dell's website.

---

[1] Dell's arguments regarding the use of confidential litigation strategies are addressed in the following section of this opinion regarding an attorney's use of confidential information to the detriment of a former client.

Dell has failed to prove that the instant litigation is substantially related to either *MicroUnity* or *Fenner* because it only recites generalities that would be applicable to a large array of potential cases. Cases are not substantially related just because they involve the same general subject matter and area of the law. *See Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770, at *5–6 (E.D. Tex. May 16, 2007) (finding that two patent infringement representations involving server architecture were not substantially related because the purported link between the technologies was too broad); *Power Mosfet Techs.*, 2002 U.S. Dist. LEXIS 27557, at *8–9 (finding that two patent infringement representations involving the same type of semiconductor device were not substantially related). The fact that Dell has filed motions to disqualify AHT in four other cases undermines its substantially related argument.[2] Each of these patent infringement cases involves a different patent. Under Dell's interpretation of the law, AHT is likely precluded from ever representing any client in a patent infringement case against Dell. This reading of the law is too broad. Dell's arguments that the instant litigation is substantially related to *MicroUnity* or *Fenner* because they each involve patent infringement and similar technologies are unconvincing. On the evidence before this Court, Dell has failed to show that the instant litigation is substantially related to either *MicroUnity* or *Fenner*.

**Confidential Information**

Next, Dell argues that Antonelli and Harrington had access to confidential information while working on *MicroUnity* and *Fenner*, and that this information will be used to the detriment

---

[2] *See Garnet Digital, LLC v. Apple, Inc.*, No. 6:11-cv-647 (E.D. Tex. filed Dec. 2, 2011) (Docket No. 93); *MacroSolve, Inc. v. AT&T Inc.*, No. 6:11-cv-490 (E.D. Tex. filed Sept. 15, 2011) (Docket No. 66); *Semiconductor Ideas To The Mkt. BV v. Tex. Instruments Inc.*, No. 1:11-cv-451 (E.D. Tex. filed Sept. 13, 2011) (Docket No. 111); *E-Contact Techs., LLC v. Apple Inc.*, No. 1:11-cv-426 (E.D. Tex. filed Sept. 8, 2011) (Docket No. 209).

of Dell in the current litigation. Dell highlights the amount of time, approximately 2,600 hours, that Antonelli and Harrington spent working on *MicroUnity* and *Fenner* and explains:

> [T]hey learned non-public information about the various business units at Dell, including information about Dell's engineering, sales, and marketing teams. They also gained knowledge about Dell's financial data, in particular how Dell stores sales information. Finally, they learned Dell's strategies for responding to allegations of patent infringement and its litigation strategies for handling actual claims of infringement.

Docket No. 136, at 14. In particular, Dell contends that Antonelli learned important Dell patent litigation strategies at the August 28 Round Rock meeting concerning *Fenner*. To support this contention, Dell provides the declarations of Michael J. Newton, outside counsel for Dell at Alston & Bird LLP, and Anthony Peterman, Chief Patent Counsel in Dell's Legal Department. *See* Docket No. 136 Attachs. 4 & 6. Newton stated that Antonelli was included on the joint defense email list. He also described the topics covered at the Round Rock meeting: "we discussed Dell programs for developing new products, how Dell products are configured, how Dell products are used, and the process by which Dell produces documents relating to these processes." Docket No. 136 Attach. 4, at 3. Peterman listed several topics he believed would have been discussed at the meeting, including information about Dell's products, document repositories, procedures for responding to licensing inquiries, and overall litigation strategy regarding patent disputes. Docket No. 136 Attach. 6, at 3–4.

Secure responds that Antonelli and Harrington did not have access to Dell's litigation playbook because their work on *MicroUnity* related to Intel. Thus, Secure contends, the litigation strategy at issue in *MicroUnity* was Intel's litigation strategy. Further, Secure argues that Antonelli and Harrington's work in *MicroUnity* was "on standard issues in patent cases like invalidity and inequitable conduct." Docket No. 148, at 11.

Regarding *Fenner*, Secure contends that Antonelli's very limited work on the case did not expose him to Dell's litigation playbook. Additionally, Secure argues that the Round Rock meeting pertained to "identifying the accused products, addressing some technical questions about them, and figuring out where the relevant documents were for collection and eventual production." *Id.* at 12. Finally, Secure contends that the Newton and Peterman declarations provide weak support for Dell's position that the Round Rock meeting revealed Dell's litigation playbook. Newton stated: "I do not specifically recall the details of what was discussed at this meeting. . . . I believe we discussed, among other things, product development, procedures, and processes. We may have also discussed Dell's defense and IP strategy." Docket No. 136 Attach. 4, at 2–3. Peterman stated:

> Although I do not remember the specific discussions during the meeting, based on my knowledge of the stage of the litigation, the roles of the individuals attending this meeting, the location of this meeting, and the length of time of this meeting, we would have discussed confidential Dell information covering numerous topics critical to an understanding of Dell and its litigation strategy.

Docket No. 136 Attach. 6, at 3. Peterman then provides a list of topics he "feel[s] certain that we would have discussed . . . ." *Id.* Secure argues that the speculative language of these declarations is insufficient to show that Antonelli was exposed to confidential information at the Round Rock meeting that could be used to Dell's disadvantage.

Dell's arguments and evidence showing that Antonelli and Harrington obtained confidential information that can be used to Dell's detriment fail to meet Dell's burden. First, Dell relies on the substantial number of hours that Antonelli, in particular, and Harrington worked on the *MicroUnity* case. However, as Secure noted, *MicroUnity* involved accused Intel microprocessors and Intel had agreed to indemnify Dell in the action. This is further supported by the billing records. Antonelli's billing log details 2,262 hours of work performed on *MicroUnity*; within this log are approximately twenty-three references to Intel and zero

references to Dell. Docket No. 137 Attach. 2. Likewise, Harrington's log of 293 hours includes approximately 12 references to Intel and one reference to Dell. Docket No. 137 Attach. 3. The billing records reveal that Antonelli and Harrington worked on the case and performed many of the activities typically performed in preparing for patent litigation. However, Dell has failed to "point to specific instances where it revealed confidential information regarding its practices and procedures." *Duncan*, 646 F.2d at 1032.

Second, Dell's evidence regarding the Round Rock meeting is insufficient to show that Antonelli was exposed to confidential information that could be used to Dell's disadvantage in the instant litigation. Both Newton and Peterman explained that they were not sure about the substance of the meeting. Both agreed that the meeting related to Dell's accused products; however, neither was able to assert, beyond mere conjecture, that the meeting covered confidential Dell litigation strategies. Absent more, Dell has failed to meet its burden of showing that Antonelli and Harrington were privy to confidential information that could now be used to Dell's detriment.

**Duty of Loyalty**

Dell's final argument—that disqualification is necessary to ensure the loyalty of Dell's former counsel—speaks to the principles underlying the tests employed by the Fifth Circuit for evaluating motions for disqualification. *See In re American Airlines*, 972 F.2d at 605 (noting that "the client's interest in the loyalty of his attorney" is a concern underlying the substantial relationship test). The Court has already addressed the substantial relationship test. There is not a substantial relationship between the instant litigation and *MicroUnity* or *Fenner*. Additionally, Dell has failed to show that Secure's counsel obtained confidential information that can be used Dell's disadvantage in this case. Accordingly, Dell's concerns regarding the duty of loyalty of its former counsel have been addressed.

## CONCLUSION

For the reasons stated herein, Dell Inc.'s Motion to Disqualify Plaintiff's Counsel (Docket No. 136) is **DENIED**.

**So ORDERED and SIGNED this 23rd day of February, 2012.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**